UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TYRICE AARON HALL,

                Plaintiff,

v.

CITY OF TACOMA et al.,

                Defendants.

Case No. 22-5380-RAJ-TLF

REPORT AND RECOMMENDATION

NOTED FOR SEPTEMBER 22, 2023

This matter comes before the Court on Pierce County Defendants'[1] motion for summary judgment. Dkt. 37. Plaintiff, who is proceeding *pro se*, brought this suit under 42 U.S.C. § 1983 alleging the following causes of action: (1) violation of the Fourteenth Amendment committed by Defendant Brian Blowers; (2) violation of the Fourteenth Amendment committed by Defendant Patti Jackson and Defendant Pierce County; and (3) violation of the Sixth and Fourteenth Amendments by Pierce County. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4).

Having reviewed Defendants' motion, Plaintiff's response, and the remaining record, the Court recommends that Defendants' motion for summary judgment should be GRANTED. Plaintiff's complaint should be dismissed with prejudice.

---

[1] The Pierce County defendants include Pierce County, Brian Blowers, and Patti Jackson.

REPORT AND RECOMMENDATION - 1

## I.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is proper when the pleadings, discovery and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

When applying these standards, the Court must draw all reasonable inferences in favor of the non-moving party. *United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir.2006). The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy his burden of persuasion at trial. *Block v. City of Los Angeles*, 253 F.3d 410, 416 (9th Cir. 2001).

Once this has occurred, the procedural burden shifts to the party opposing summary judgment. That party must go beyond the pleadings and affirmatively establish a genuine issue on the merits of their case. Fed.R.Civ.P. 56(e). The nonmoving party must do more than simply deny the veracity of everything offered or show a mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence is likewise insufficient to create a genuine factual dispute. *Anderson*, 477 U.S. at 252. The

nonmoving party must demonstrate that the disputed fact is material, and that the dispute is genuine. *Id.* at 248–49.

The nonmoving party's failure of proof "renders all other facts immaterial," creating no genuine issue of fact and thereby entitling the moving party to the summary judgment it sought. *Celotex Corp.*, 477 U.S. at 323. However, if there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment may not be granted. *Anderson*, 477 U.S. at 250.

**B. Factual Allegations**

At the time Mr. Hall filed his complaint, he was a pretrial detainee at Pierce County Jail. Dkt. 32.

Plaintiff alleges that on July 2, 2021, he was experiencing a medical emergency. Dkt. 25 (Amended Complaint) at 5. Plaintiff does not specify what exactly the medical emergency was. *Id.* Plaintiff attempted to inform correctional officers, including Defendant Blowers, of his medical emergency by pressing on the emergency button in the cell and banging on the cell door. *Id.*

Plaintiff was instructed by an unidentified officer to stop banging on the door and to "cuff up" before they would open the cell door. *Id.* Plaintiff resisted after multiple requests. *See* Dkt. 55 at 8; *see also* Dkt. 58, Declaration of Jana Hartman, Exh. N at 9. Defendant Blowers then aimed his conducted energy weapon (CEW) at Plaintiff's cell door and opened it. Dkt. 58, Exh. N at 9. Other officers assisting in the situation were only then able to cuff Plaintiff. *Id.* Plaintiff refused to stand or assist with being moved out of his cell. *Id.* Once he was out of his cell and was standing near the stairs, Plaintiff

NOTED FOR SEPTEMBER 22, 2023 - 3

wrapped his legs around the handrail. *Id.* Plaintiff called this "another round of peaceful protesting." Dkt. 25 at 6. Officers were unable to pull him off.

Defendant Blowers ordered Plaintiff to let go, and when he did not, Defendant Blowers placed his CEW against Plaintiff's chest and deployed it once. Dkt. 58, Exh. N at 9. Plaintiff subsequently released the handrail. *Id.* Medical staff cleared Plaintiff after examining him. *Id.*

Plaintiff alleges that as a result of this incident, he suffered injury from the taser, pain and suffering, and both mental and physical duress, in violation of his Fourteenth Amendment rights. Dkt. 25 at 5.

Plaintiff separately claims that from February 2021 to May 2021, and then from February 2022 to May 2022, he was placed in a dry cell -- which meant limited access to toilets and water. Dkt. 25 at 7. Plaintiff states that Defendant Jackson enacted policies that confined detainees to their cells for 20 hours a day. *Id.* Plaintiff and other detainees were directed by unidentified correctional officers to relieve themselves in coffee bags because of the extended delay to use the bathroom. *Id.* Plaintiff does not identify any specific dates or incidents when he was denied access to the bathroom or instructed to relieve himself in a coffee bag. As a result, Plaintiff claims he suffered from emotional and physical duress and pain and suffering in violation of his Fourteen Amendment rights. *Id.* at 9.

Plaintiff also claims that his Sixth and Fourteenth Amendment rights were violated by Pierce County. After Plaintiff's arraignment in December 2020, he was assigned new counsel on December 20, 2020. Dkt. 58, Declaration of Jana Hartman, Exh. B. He asked his attorney to demand a speedy trial but was unable to reach his

counsel for 90 days. Dkt. 25 at 9. Throughout the pendency of his criminal case, multiple orders continuing Hall's trial date were entered by The Honorable Edmund Murphy. *See* Dkt. 58 at Exhs. C, E, F, G, H, I, J. While awaiting trial, Plaintiff also filed a November 4, 2021, letter to the court wherein he "demanded" a speedy trial. *Id.* at Exh. K. The matter proceeded to jury trial on July 1, 2022, and Plaintiff was convicted. *Id.* at Exh. L.

### C.  42 U.S.C. § 1983

To be entitled to relief under 42 U.S.C. § 1983, a plaintiff must show: (i) the conduct complained of was committed by a person acting under color of state law; and (ii) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is not merely a "font of tort law." *Parratt*, 451 U.S. at 532. That plaintiff may have suffered harm -- even if due to another's negligent conduct -- does not in itself necessarily demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, 474 U.S. 344, 347 (1986). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant affirmatively committed an act, participated in another's affirmative act, or omitted to perform an act which they were legally required to do, that caused the deprivation. Id. (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. . . . *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a

municipal "person" under 42 U.S.C. § 1983). Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution.

Unless Plaintiff makes a two-part showing, qualified immunity shields government officials from liability. The Plaintiff must show both: the official(s) violated a federal statutory or constitutional right, and – at the time of the alleged act or failure to act there was clearly established law that defined the contours of the federal right objectively putting the official(s) on notice – i.e., every reasonable official would understand that what they are doing is unlawful. *Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019); *District of Columbia v. Wesby,* 583 U.S. 48, 63 (2018).

When qualified immunity is reviewed in the context of a defense motion for summary judgment, the evidence must be considered in the light most favorable to the plaintiff with respect to central facts. *Tolan v. Cotton,* 572 U.S. 650, 657 (2014) (per curiam). If there is a genuine issue of material fact concerning both -- (1) whether it would be clear to a reasonable officer their conduct was unlawful under the circumstances, and (2) whether the defendant's conduct violated a constitutional right -- then summary judgment granting qualified immunity is not appropriate. *Bonivert v. City of Clarkston,* 883 F.3d 865, 871-72 (9th Cir. 2018).

To determine whether there was clearly established law, the Court has stated, "[w]hile there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [action] beyond debate"; and the Court has also observed, "there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar

circumstances." *Wesby*, at 64. A clearly established right exists if "controlling authority or a robust consensus of cases of persuasive authority" have held, on facts that are close or analogous to the current case, that such a right exists. *Hines v. Youseff,* 914 F.3d 1218, 1229 (9th Cir. 2019).

In some contexts, general constitutional rules identified in previous court decisions may apply with such obvious clarity to the specific conduct of a defendant, that qualified immunity will not apply even though existing case law did not hold the specific action in question unlawful. *United States v. Lanier,* 520 U.S. 259, 271 (1997); *Bonivert,* 883 F.3d at 872-73. If qualified immunity operated as a shield for all conduct not specifically addressed in existing case law at the time of the event in question, officials would never be held accountable for unprecedented constitutional violations that would appear obvious. *Hope v. Pelzer,* 536 U.S. 730, 740-42 (2002) (finding that a correctional officer's act of handcuffing an inmate to a hitching post in a painful position under dangerous and degrading circumstances was "antithetical to human dignity" and so obviously wanton, painful and cruel under the Eighth Amendment that the officer had fair notice that this was unlawful under existing legal precedent).

D. **Plaintiff's Fourteenth Amendment Claim against Defendant Blowers**

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees by prohibiting the State from punishing them. *See Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979). The Fourth Amendment sets the applicable constitutional limitations for analyzing excessive force claims by pretrial detainees. *Id*. (citing *Pierce v. Multnomah County,* 76 F.3d 1032, 1043 (9th Cir.1996)). Excessive force claims by pretrial detainees turn on whether the officer's use of force was objectively reasonable,

given the circumstances. *Graham v. Connor,* 490 U.S. 386, 397 (1989). Jail officials must be free to take action to ensure the safety of themselves and other inmates, and to ensure security and order within the prison. *See Bell,* 441 U.S. at 546–47.

A non-exhaustive list of considerations that may bear on the reasonableness of the force used include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

Because the *Kingsley* standard applicable to excessive force claims by pretrial detainees is purely objective, it does not matter whether the defendant understood that the force used was excessive or intended it to be excessive. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (en banc). A pretrial detainee can prevail by providing " '*objective* evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose.' " *Id.* (quoting *Kingsley*, 576 U.S. at 398) (emphasis in original).

Defendant Blowers asserts that the use of force in this case was objectively reasonable as a matter of law. Plaintiff was banging on his cell door to get attention from an officer. Defendant Blowers arrived at Plaintiff's cell and found another officer trying to get Plaintiff to place his hands out the cuff port to be cuffed up. Plaintiff refused. Defendant Blowers explained that he needed to cuff Plaintiff because Plaintiff was harming himself by using his head to bang on his cell door. Defendant Blowers then aimed his conducted energy weapon (CEW) at Plaintiff's cell door and opened it. Other

officers assisting in the situation were able to then cuff Plaintiff. Plaintiff refused to stand or assist with being moved out of his cell. Once he was out of his cell and was standing near the stairs, Plaintiff wrapped his legs around the handrail and refused to let go. Defendant Blowers ordered Plaintiff to let go, and when he did not, Defendant Blowers placed his CEW against Plaintiff's chest and deployed it once. Plaintiff subsequently released the handrail.

In opposition, Plaintiff submitted no evidence to show that Defendant Blowers' use of the taser was unreasonable in light of the circumstances. Plaintiff claims that he had a medical emergency, but does not describe what it was. In his response, Plaintiff states that "there is evidence of Plaintiff's medical history," but does not provide that evidence or point to anything in the record that would support his statement. Dkt. 55 at 12. He further appears to rely on the Defendants' answer to argue that the "Court should be able to presume" that Defendant Blowers' actions were excessive. *Id.* at 9. The Court cannot "presume" facts.

Plaintiff has failed to present admissible evidence to support his allegations that Defendant's response was anything more than an appropriate attempt to deal with a noncompliant inmate. The Court should hold that Defendant Blowers' actions were constitutional, and grant Defendants' motion for summary judgment on this claim.

**E. Defendant Blowers is Entitled to Qualified Immunity**

Unless Plaintiff makes a two-part showing, qualified immunity shields government officials from liability. The plaintiff must show both: the official(s) violated a federal statutory or constitutional right, and – at the time of the alleged act or failure to act there was clearly established law that defined the contours of the federal right

1  objectively putting the official(s) on notice – i.e., any reasonable official in the
2  defendant's shoes would understand that what they are doing is unlawful. *City of*
3  *Escondido v. Emmons,* 139 S.Ct. 500, 503 (2019); *District of Columbia v. Wesby,* 138
4  S.Ct. 577, 589 (2018).

5       Here, Plaintiff has failed to present sufficient evidence of a constitutional violation
6  by Defendant Blowers, and fails to show there were circumstances that would have
7  objectively put Blowers on notice – i.e., any reasonable official in the defendant's shoes
8  would understand that what they are doing is unlawful.. As discussed above, Plaintiff did
9  not submit any evidence to show that Defendant Blowers' actions were unreasonable.
10 Rather, he made a conclusory argument that Defendant's action was excessive. Thus,
11 the Court should hold Defendant Blowers is entitled to qualified immunity regarding
12 Plaintiff's §1983 claims.

13     **F. Plaintiff's Fourteenth Amendment Claim against Patti Jackson and Pierce**
14         **County**

15     Plaintiff alleges that Jackson and Pierce County violated his due process rights by
16 placing him in a dry cell for months at a time with limited access to bathroom facilities.

17       1. <u>Personal Participation – Chief Patti Jackson</u>

18     With respect to Ms. Jackson specifically, Plaintiff claims that Ms. Jackson enacted
19 policies that confined detainees in their cells for 20 hours a day. Defendants argue that
20 Plaintiff's claim against Ms. Jackson should be dismissed for failure to show her
21 personal participation.

22     To obtain § 1983 relief, a complaint must allege that each particular defendant
23 caused, or personally participated in causing, the deprivation of a particular protected

constitutional right. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977). Conclusory allegations against an official are insufficient to state a claim for relief. Rather, the Plaintiff must set forth specific facts showing a causal connection between each defendant's actions and the harm allegedly suffered by plaintiff. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

In addition, *respondeat superior* is not applicable to § 1983 actions. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981). To state a claim against a supervisor, Plaintiff must allege facts showing the individual supervisor participated in or directed the alleged violation, or knew of the violation and failed to act to prevent it. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999); *see also Monell v. New York City Department of Social Services*, 436 U.S. 658, 691 (1978).

Here, Plaintiff states, in a conclusory fashion, that Defendant Jackson enacted this policy, but he does not provide any facts or evidence of her personal involvement in causing the harm, or that she knew of the violation and failed to act to prevent it. Thus, Plaintiff's claim against Defendant Jackson should be dismissed.

    2. <u>Conditions of Confinement – Chief Jackson</u>

Further, Defendants state that Plaintiff has failed to demonstrate that Defendant Jackson violated Plaintiff's due process rights. "Eighth Amendment protections apply only once a prisoner has been convicted of a crime, while pretrial detainees are entitled to the potentially more expansive protections of the Due Process Clause of the Fourteenth Amendment." *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1246 n. 5 (9th Cir. 2016) (citing *Kingsley v. Hendrickson*, *Kingsley v. Hendrickson*, 576 U.S. 389, 399-

401 (2015)). Even though conditions of confinement claims brought by pretrial detainees arise under the Due Process Clause, the guarantees of the Eighth Amendment "provide a minimum standard of care for determining rights as a pretrial detainee." *Gordon v. Cty. Of Orange*, 888 F.3d 1118, 1122 (9th Cir. 2018).

To satisfy the objective standard for deliberate indifference claims, the deprivation alleged "must be, objectively, 'sufficiently serious.' " *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted). That is, the institution official's "act or omission must result in the denial of 'the minimum civilized measure of life's necessities.' " *Id.* For claims based on failure to prevent harm, the plaintiff also must show they were "incarcerated under conditions posing a substantial risk of serious harm." *Id.*

Under the Due Process Clause, the proper inquiry is whether the conditions amount to punishment of the detainee. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Because a pretrial detainee has not been adjudicated guilty of any crime, the government "may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment or otherwise violate the Constitution." *Id.* at 536.

A pretrial detainee may show that they have been unconstitutionally punished by demonstrating the action was taken with an expressed intent to punish, or that the actions are not rationally related to a legitimate nonpunitive government purpose. *Kingsley v. Hendrickson*, 576 U.S. at 398. If the conditions of confinement that is being challenged are arbitrary or purposeless, "a court permissibly may infer that the purpose of the governmental action is punishment." *Bell*, 441 U.S. at 539.

Regarding Plaintiff's access to the bathroom, Plaintiff does not provide specific instances of when *he* was specifically denied access while placed in a dry cell. The actual alleged incidents and time frames are nonspecific and vague. Further, his assertion that the use of toilet bags became a common practice is conclusory. Plaintiff fails to allege sufficient facts to establish that he has been subjected to conditions of confinement that rise to the level of a constitutional violation.

### 3. Deliberate Indifference – Pierce County

To set forth a § 1983 claim against a municipality, a Plaintiff must show the Defendant's employees or agents acted through an official custom, pattern, or policy permitting deliberate indifference to, or violating, the plaintiff's civil rights, or that the entity ratified the unlawful conduct. *Monell*, 436 U.S. at 690-91. A Plaintiff must show (1) deprivation of a constitutional right; (2) the municipality has a policy; (3) the policy amounts to deliberate indifference to a plaintiff's constitutional rights; and (4) the policy is the moving force behind the constitutional violation. *Monell,* 436 U.S. at 694; *Benavidez v. County of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021).

A municipality "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original). Similarly, mere negligence in training employees cannot support municipal liability; instead, Plaintiff must allege facts demonstrating the failure to train amounts to deliberate indifference to the rights of those who deal with municipal employees. *City of Canton*, 489 U.S. at 388–89. Finally, a single incident of unconstitutional action is generally insufficient to state a

claim for municipal liability. *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1154 (9th Cir. 2021).

Here, Plaintiff alleges that Ms. Jackson enacted a policy that confined detainees in their cell for 20 hours a day. Plaintiff claims he will offer evidence of these conditions during trial though multiple testimonies and documents gathered through impending motions to compel he will file. Dkt. 55 at 6. The discovery period has closed in this matter, and Plaintiff failed to provide or point to such evidence in his opposition. He does not identify which policy caused the alleged constitutional violation or the language contained in the policy. Plaintiff's conclusory statements against Pierce County are insufficient to establish a Section 1983 claim.

Thus, the Court recommends granting Defendants' motion for summary judgment on Plaintiff's Fourteenth Amendment claims against both Pierce County and Chief Jackson.

**G. Plaintiff's Speedy Trial Claim – Pierce County**

Plaintiff's third claim asserts a violation of his Sixth and Fourteenth Amendment rights by Defendant Pierce County. Plaintiff's claim appears to relate to his belief his right to a speedy trial has been violated as a result of ineffective counsel.

When examining delays in trial or other proceedings brought by pretrial detainees, courts typically analyze the reasonableness of the delay under the Fourteenth Amendment. *See Trueblood v. Wash. State Dep't of Social and Health Serv.*, 822 F.3d 1037, 1041-44 (9th Cir. 2016) (weighing a pretrial detainee's claim of delay under § 1983 in the context of a competency evaluation); *see also Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003). When analyzing a claim for

a speedy trial violation, courts balance the " '[l]ength of delay, the reason for the delay, the [criminal] defendant's assertion of his right, and prejudice to the [criminal] defendant.' " *Trueblood*, 822 F.3d at 1044 (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). "Length of delay acts as a triggering mechanism. Unless there is a delay [that] is presumptively prejudicial, there is no need to inquire further." *United States v. Geeland*, 520 F.2d 585, 587 (9th Cir. 1975) (concluding that a delay of more than six years between indictment and arraignment was presumptively prejudicial and holding that a criminal defendant's right to a speedy trial had been violated).

If a plaintiff has been convicted of an offense and subsequently brings a § 1983 action for a speedy trial violation, he must prove that the conviction or sentence has been reversed on direct appeal, expunged, or " 'declared invalid by a state tribunal authorized to make such determination[s] ....' " *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

In *Wallace v. Kato*, the Supreme Court held that *Heck* does not encompass the principle that "an action which would impugn an anticipated future conviction cannot be brought until that conviction occurs and is set aside." 549 U.S. 384, 393 (2007). Instead of requiring dismissal of civil claims filed in the shadow of an impending criminal case under *Heck*, the Supreme Court noted that if a plaintiff files a § 1983 false arrest claim before he is convicted, or "any other claim related to rulings that likely will be made in a pending or anticipated criminal trial, it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Id*. at 393-94. If the plaintiff is then convicted, and

the stayed civil suit would impugn that conviction, *Heck* then requires dismissal. *Id*. Otherwise, the case may proceed. *Id*.

Plaintiff argues that his claim should not be barred by *Heck* due to "extraordinary circumstances." Dkt. 55 at 6. He does not, however, describe what these extraordinary circumstances are. Nor has Plaintiff stated that his conviction has been invalidated. Thus, Plaintiff's speedy trial claim is *Heck* barred, and Defendants' motion for summary judgment on this claim should be granted.

## II. CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court GRANT Defendants' motion for summary judgment and dismiss Plaintiff's claims with prejudice.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on September 22, 2023, as noted in the caption.

Dated this 7th day of September, 2023.

Theresa L. Fricke
United States Magistrate Judge